## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EMILY BANKSTON**<br>**Plaintiff** | **CIVIL ACTION NO.:** |
| | **SECTION:** |
| **VERSUS** | |
| | **JUDGE:** |
| **ST. JOSEPH OF HARAHAN, L.L.C.**<br>**Defendant** | **MAGISTRATE:** |

## COMPLAINT

**NOW HERE COMES**, through undersigned counsel, Plaintiff, Emily Bankston (herein "Bankston" or "Plaintiff") who submits the following Complaint and respectfully avers as follows:

## PARTIES

1.

Plaintiff, Emily Bankston is a person of the full age of majority and domiciled in the Parish of Jefferson, State of Louisiana.

2.

Made Defendant is St. Joseph of Harahan, L.L.C. (hereinafter "St. Joseph" or "Defendant"), a limited liability company with a domicile located in the Parish of Jefferson, State of Louisiana.

## JURISDICTION & VENUE

3.

This Court has jurisdiction over this proceeding under 28 U.S.C. § 1331, as Plaintiff's claims arise under the federal law. Additionally, the Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. Venue is proper in the Easter District of Louisiana, as a substantial part of the

events or omissions giving rise to the claim occurred in this District or otherwise in accordance with 28 U.S.C. § 1391.

## FACTS

4.

Ms. Bankston began what she initially believed to be a lengthy career with St. Joseph while pregnant. Because of the communication with St. Joseph upon hire, she was under the impression that there would be no issues related to her pregnancy while employed there. However, that mentality soon changed within just a few short weeks when St. Joseph discriminated against Ms. Bankston based on her sex and pregnancy.

5.

Ms. Bankston began her employment with St. Joseph towards the end of July or early August of 2019 as a CNA. No official interview was conducted prior to her beginning her employment; rather, Ms. Bankston completed paperwork, went on a tour with another CNA, and spoke to the Director of Nurses, Charlotte Wolfe, for a brief period. At the time of hire, she was approximately five and a half months pregnant, and she disclosed her pregnancy to St. Joseph's administration.

6.

Additionally, St. Joseph was made aware of her pregnancy when Ms. Bankston indicated that she was seeking treatment from an obstetrician in her new hire packet, including information that she had a high risk pregnancy. Not only did Ms. Bankston intentionally inform St. Joseph as an organization of her pregnancy and needs at the beginning stages of her employment, but the following individuals were also made aware: Ann Beckenmeir, the director of Human Resources ("HR"); DeEbony, the Director of the CNAs; and the Regional Director, whose name is unknown.

7.

Within the first few days of her employment with St. Joseph, Ms. Bankston asked other employees for help with patients, including lifting patients and a patient with Clostridium difficile (often called C. diff.), but no one would help her. Ms. Bankston brought this to the attention of DeEbony, who informed Ms. Bankston to use the Hoyer lift. Based on DeEbony's advice, Ms. Bankston attempted to get the lift from another floor to aid her in lifting a patient; however, other CNAs informed Ms. Bankston that she could not take the lift off the floor it was currently on. In turn, Ms. Bankston was unable to use the lift that she was instructed to use.

8.

Ms. Bankston also complained to Ann Beckenmeir, the HR Director, and Ann responded "people will be people." Ann informed Ms. Bankston that in order for her to receive the proper accommodations, Ms. Bankston would need to provide a doctor's note with specific restrictions.

9.

On August 12, 2019, Ms. Bankston was required to lift a 200+ pound patient without a lift, which she was unable to do without injuring herself. Because she was unable to use a lift and as a result of lifting the patient, Ms. Bankston injured herself and went to the emergency room after her shift. At the time of her injury, she let Israli, a coworker, and DeEbony know what happened and that she planned to seek treatment at the emergency room. After seeking care at the emergency room, Ms. Bankston sought care from her OB/GYN the following day.

10.

On August 13, 2019, Ms. Bankston turned in her doctor's note with the lifting restrictions from Dr. Zabel, as requested by Ann.[1] Ms. Bankston worked her regularly scheduled shift on this day, but only performed light duty work. For example, other employees helped her lift patients; she got ice for

---

[1] Exhibit 1 - August 13, 2019 Doctor's Note.

3

patients; and she transported patients in wheelchairs. Importantly, upon receipt of the note, Ann informed Ms. Bankston that another employee at St. Joseph, who was previously a CNA, had hurt her knee at some point during her employment. Because of her restrictions, St. Joseph accommodated her by placing her in the role of Activities Director. Specifically, Ann stated something along the lines of "We can find something for you to do, like we did for her."

11.

Then, despite this conversation and the request and receipt of the doctor's note, on August 14 at 10:48 a.m., while Ms. Bankston was getting ready for her 2:00 pm shift, she received a text message from Ann, which stated "Emily, this is Ann in Human Resources at St. Joseph. I need to inform you that we do not have light duty for our employees, and since you are unable to lift more than 20 lbs. you will no longer be able to work here. I have to terminate you effective today." A few hours later at 2:26 p.m., Ann sent another text message, which stated "Emily, please disregard my last text. I was just informed that we DO have light duty available" Ann then called Ms. Bankston after sending the second text message to inform her that St. Joseph had light duty work available, including the ability to use a Hoyer lift and a board that can be used to transfer patients. During this conversation, Ann informed Ms. Bankston that she did not need to report to work that day (August 14) but that she could come in the following day and would be accommodated accordingly.

12.

On August 15, 2019, Ms. Bankston reported to work as usual and worked a light duty shift, as promised by Ann. Based on this work day and previous conversation with Ann, Ms. Bankston believed she would continue to work at St. Joseph in a light duty capacity.

13.

However, on August 16, 2019 at 11:42 a.m., prior to the start of Ms. Bankston's shift, Ann sent

4

Ms. Bankston a text message, which states "Good morning, Emily. Mai [sic] I please have your husband's information to be enrolled in the dental and vision plans?" This was yet another indication that Ms. Bankston's employment would continue with the light duty request. But, just over an hour later, at 12:55 p.m., Ann wrote "Emily, I'm sorry to tell you this, but I just received word from our Regional Director that you won't be able to continue your employment here because you can't perform your job duties as a result of your physician's restrictions. I will be terminating you today." Based on this final text message from Ann, Ms. Bankston was terminated due to her light duty restrictions, which were a result of her pregnancy.

## Pregnancy Discrimination Act and LEDL

14.

All foregoing allegations are incorporated herein by reference.

15.

The Pregnancy Discrimination Act and Louisiana Employment Discrimination Law make it unlawful to discriminate against an individual because of, or on the basis of, pregnancy or related medical conditions. See 42 U.S.C. § 2000e(k); La. Rev. Stat. § 23:342.

16.

Plaintiff provided a doctor's note from her physician to the director of human resources restricting her activities, but this restriction was disregarded by St. Joseph, though accommodations were made for other employees with similar restrictions, though not pregnant.

17.

Defendant denied Plaintiff's request for an accommodation, which constituted disparate treatment under the PDA and the LEDL because the employer did accommodate others similar in their inability to perform certain functions.

18.

Defendant's actions were intentional, malicious, and/or with reckless indifference to Plaintiff's federally protected rights.

**Americans with Disabilities Act and LEDL**

19.

All foregoing allegations are incorporated herein by reference.

20.

Defendant St. Joseph is a political subdivision engaged in an industry affecting commerce that employs over 15 full-time employees, and is therefore an "employer" for purposes of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

21.

Plaintiff was and is an employee for the purposes of the ADA and LEDL.

22.

Defendant St. Joseph had a policy and/or custom of not accommodating physical limitations of pregnant women as they would others with similar restrictions.

23.

Defendant St. Joseph refused to accommodate Plaintiff's requests for an accommodation to limit her lifting requirements, though such could be reasonably done with little accommodation.

24.

Plaintiff informed her employer of her high-risk pregnancy, which made it unsafe for her to risk physical injury. Additionally, it should have been obvious to her employer because Plaintiff injured herself while working and had to go to the emergency room.

25.

Defendant's actions were intentional, malicious, and/or with reckless indifference to Plaintiff's federally protected rights.

26.

Plaintiff is entitled to damages from Defendant, including:

a. back pay, including wages and salary, overtime, and benefits;

b. reinstatement, or front pay;

c. non-economic and other compensatory damages, including physical pain and suffering and mental anguish;

d. past and future medical expenses;

e. punitive damages;

f. pre-judgment interest;

g. costs;

h. attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in favor of Plaintiff and against Defendant, as follows:

a. Back pay, including wages and salary, overtime, and benefits;

b. Reinstatement, or front pay;

c. Other compensatory damages including those for emotional and physical injuries;

d. Medical expenses past and future;

e. Lost wages, past and future;

f. Pre-judgment interest;

g. Punitive damages;

h. Attorney's fees and costs.

## JURY DEMAND

Plaintiff requests a trial by jury.

          Respectfully submitted,

          **SANGISETTY LAW FIRM, LLC**

          */s/ Ravi Sangisetty*
          Ravi K. Sangisetty, BAR NO. 30709
          3914 Canal Street
          New Orleans, Louisiana 70119
          Telephone:    504-662-1016
          Facsimile:    504-662-1318
          whitney@sangisettylaw.com
          ATTORNEYS FOR PLAINTIFF

**\*\*\*\*SERVICE TO BE ACCOMPLISHED BY WAIVER\*\*\*\*\***